FEDERAL LAND BANK OF NEW ORLEANS *v.* BOYD *et al.*

(Division B. Dec. 7, 1936.)

[171 So. 1. No. 32406.]

**Bridgforth & Love** and **Louis J. Wise,** all of Yazoo City, for appellant.

**Clements & Clements**, of Rolling Fork, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

Mrs. Nannie B. Boyd, one of the appellees here, on the 21st day of September, 1917, was the owner of a tract of land known as the "Duncan Plantation," and also of another adjoining plantation known as the "Woodland Plantation," which latter was sold on that date to H. C. Watson, with the exception of the two acres involved in this suit.

Mrs. Boyd gave a deed of trust to the Federal Land Bank of New Orleans, dated January 15, 1925, and acknowledged January 19, 1925, in which the land was described as follows:

"North half of South half of Section 19; North half of Southwest quarter of Section 20; West half of Southeast quarter of Section 20; 27 acres in West half of Northwest quarter of Section 20, and Northwest quarter of Northeast quarter of Section 29, all in Township 13, Range 8, West, and furnished an abstract of title."

In the application for the loan to the bank the above-mentioned twenty-seven acres in the west half of the northwest quarter of section 20, Tp. 13, R. 8 west, was particularly described.

Subsequent to the execution of this deed of trust to the Federal Land Bank, Mrs. Boyd conveyed the lands embraced in the deed of trust to G. V. Hauff, including the two acres excepted from the deed to H. C. Watson. The deed from Mrs. Boyd to Hauff was executed upon the consideration of his assuming and agreeing to pay Mrs. Boyd's indebtedness to the bank, and reads as follows:

"In consideration of $500.00 cash in hand to me this day paid by G. V. Hauff, receipt of which is hereby acknowledged, and for the further considerations hereinafter mentioned and set forth, I, Mrs. N. B. Boyd, do sell, convey and warrant unto the said G. V. Hauff, the following described tract of land lying and being situated in the County of Issaquena, and the State of Mississippi, to-wit;—North half of South half of Section 19; North half of Southwest quarter and West half of Southeast quarter of Section 20; 27 acres in the West half of the Northwest quarter of Section 20, and the Northwest quarter of the Northeast quarter of Section 29, all in Tp. 13, Range 8, West, and also a certain two acre tract of land excepted in deed from me to H. C. Watson dated September 1, 1917, lying on the North side of a bayou and between said bayou and Duncansby Plantation, which said tract of land is bounded by said bayou on the East, South and West, and by said Duncansby Plantation on the North, and on which is situated a cabin, all in Section 19, Township 13, Range 8, West,

said land conveyed hereby being known by name as 'Duncan' Plantation in said county and State, it being my intention to and I do hereby sell, convey and warrant to said grantee said plantation as known by that name, and each and every part thereof as owned by me, and as known by said name, whether the same be hereinabove correctly described by numbers and metes and bounds, or not. The further consideration hereinabove mentioned is the assumption of and agreement by said grantee to pay off and discharge a certain first mortgage now on said lands in favor of the Federal Land Bank of New Orleans, Louisiana, dated January 15, 1925, recorded in Mortgage Book M, at page 7, of the Land Mortgage Records in the office of the Clerk of the Chancery Court of said County, special reference to which is hereby made, and under which said mortgage there is now owing a balance of principal of Ten Thousand Dollars, the same to be assumed and paid off as written and of record. The said grantee shall pay all taxes, general and special assessments on said property, for the year 1929, and thereafter. And to evidence the assumption and agreement aforesaid by said grantee to pay off said first mortgage indebtedness, the said grantee joins herein by signing and acknowledging this deed.

"Witness our signatures this the 1st day of June, 1929.
"[Signed]  Mrs. N. B. Boyd

"State of Mississippi,
"County of Washington,
"Town of Glen Allen.

"Personally appeared before me, the undersigned authority in and for the aforesaid Washington County and State, the within named Mrs. N. B. Boyd and G. V. Hauff, who acknowledged that they each signed and delivered the foregoing instrument on the day and year and for the purposes therein mentioned and set forth.

"Given under my hand and official seal this the 1st day of June, A. D. 1929.

"[Signed]  Pat Sharkey,
"Notary Public."

Default was made in the payment of said indebtedness to the bank, and it proceeded to foreclose in pais, but in the proceedings did not mention G. V. Hauff as a mortgagor.

Suit was brought to recover a deficiency, the land having sold for less than the amount due, and having been bought in by the Federal Land Bank.

It was set up in the bill that there was a building upon the land embraced in the deed of trust, and that insurance thereon for five hundred dollars had been taken out by Mrs. Boyd, and for four hundred dollars by the bank. The building burned, and the insurance checks were made payable jointly to the bank and Mrs. Boyd. Some contention arose, and it was arranged that some of the insurance might be used to replace the building upon the two acres of land.

It was the contention of the bank that the land upon which the house originally stood was embraced in the deed of trust, and that Hauff, being the son of Mrs. Boyd and living in the house at the time the deed of trust was given, had so represented to the agent of the bank when it was inspecting the lands involved and the buildings thereon.

This was disputed by the witnesses for the appellees, Mrs. Boyd and G. V. Hauff.

By amendments to the original bid, the bank set up the contention that it was entitled to a lien against the two acres of land not contained in the original deed of trust, but contained in the deed from Mrs. Boyd to G. V. Hauff in which he assumed to pay her debt to the bank. It was also claimed by the bank that it had a lien upon the house situated on the two acres, by reason of the insurance money which went into its rebuilding after it

burned. As heretofore stated, there was a dispute as to who was entitled to the insurance money.

It was set up by the appellees that the foreclosure proceedings under the deed of trust were void because G. V. Hauff was not mentioned in the notice of foreclosure.

At the hearing, the chancellor held that the foreclosure was void because of the failure to mention Hauff, and that the bank was not entitled to a lien upon the two acres on which the house stood, and dismissed the bill as to said two acres. The chancellor reserved, for future consideration, the question as to the amount of the debt due, and whether or not Hauff was personally obligated to the bank to pay the debt, and appointed a master to state an accounting as to the amount due, and to foreclose the deed of trust for the amount found to be due, and granted an appeal to this court.

There is no contention as to the correctness of the chancellor's decree setting aside the former sale, and ordering a reformation of the deed of trust so as to properly describe the twenty-seven acres of land mentioned therein, which were not definitely described in the deed of trust.

The only question presented for our decision is as to the correctness of the chancellor's decree, which appears to be final, dismissing the bill as to the two acres, described in the deed from Mrs. Boyd to G. V. Hauff. As to this two acres, we are of the opinion that the chancellor was in error in dismissing the amended bill, and we think G. V. Hauff assumed to pay Mrs. Boyd's debt to the bank as a part of the consideration, and that this assumption, under which Hauff went into possession of the land, assenting to the terms of the deed, creates a trust in favor of the bank for the payment of the debt due by Mrs. Boyd to it.

In the case of Lee v. Newman, 55 Miss. 365, it was said in a syllabus, that "J. M. N., to secure a debt to L., gave a deed in trust on certain town lots, which he afterwards

sold, together with some other lots, to R. S. N., for a consideration of $8,000, recited as follows: 'The sum of $5,024.72 in cash, paid by the party of the second part (the grantee) to the party of the first part (the grantor), and the further sum of $2,975.28 assumed to be paid to L. in satisfaction of a deed in trust for the last-mentioned sum, which said deed is a lien and incumbrance upon the property hereinafter conveyed.' R. S. N. having failed to pay off the debt to L., the latter caused those lots covered by his deed in trust to be sold thereunder, and, they not being sufficient to pay the debt, he then filed a bill to subject the other lots conveyed to R. S. N., and not covered by the deed in trust, to the payment of the balance due. The bill was resisted upon the ground that L. had no claim upon any of the lots not embraced in his deed in trust, and that, being no party to the conveyance, from J. M. N. to R. S. N., he acquired no rights by the recitals thereof, and could maintain no suit thereon. Held, that, by reason of the assumption recited in the conveyance, R. S. N. took the land charged with a trust for the benefit of L., and a court of equity will enforce the same at his suit, as against R. S. N., and all parties deriving title through him, the conveyance showing upon its face that a part of the purchase-money was unpaid, and was to be paid to L.''

In the course of the opinion the court said that: ''The deed recites that the property is incumbered with a lien to Lee for $2,975, which the vendee has assumed to pay, and credit for which he has received in the cash payment made to the vendor. Certainly, as against the vendor, he could not escape payment of this portion of the purchase-money by showing that, in point of fact, there was no such incumbrance. This is a matter in which he has no concern. Having agreed to pay $8,000 as the purchase price, he must pay it, or surrender the land. The authorities, indeed, go much further than this, and hold that where the vendee has gone in under a conveyance

reciting a previous mortgage to other persons, and has received credit in his purchase for the amount of said mortgage, he will not be allowed, in a foreclosure suit brought by the mortgagees, to question the validity of the mortgage, even though it be absolutely void. Sands v. Church, 6 N. Y. 347; Murray v. Judson, 9 N. Y. 73 (59 Am. Dec. 516); Hartley v. Harrison, 24 N. Y. 170. So, also, where the previous mortgage is nominally for a much larger amount than is really due, but the vendee obtains credit for the nominal sum, he will not be allowed to pay to the mortgagees the real amount due, but must pay to them the full sum expressed, and leave them to settle for the excess with his vendor; and the principle will apply to all successive purchasers. Freeman v. Auld, 44 N. Y. 50. The obvious principle of these decisions is that the vendor has the right to impose upon the sale of his property such conditions as he chooses, and when these are plainly expressed in the conveyance, the vendee who enters under it takes the property cum onere, and must discharge the burden. Nor is an obligation to pay the debts of the vendor to a third person, though in parol, obnoxious to that provision of the statute of frauds which requires all undertakings to pay the debts of another to be in writing. . . . In such case the property is received under a trust, which will itself form a good consideration, inuring to the benefit of him to whom the payment is due; and, if the purchaser has received credit for the sum thus contracted to be paid to such other person, the law will treat it as money had and received to his use."

See, also, Dodge v. Cutrer, 100 Miss. 647, 56 So. 455; Washington v. Soria, 73 Miss. 665, 675, 19 So. 485, 55 Am. St. Rep. 555; Barnes v. Jones, 111 Miss. 337, 71 So. 573; and Gilliam v. McLemore, 141 Miss. 253, 106 So. 99, 43 A. L. R. 979.

We are unable to make any decision on the question reserved by the chancellor for future consideration, because the facts must yet be determined.

The judgment of the court below will, therefore, be reversed as to the holding in regard to the two acres, and affirmed and remanded as to other parts of the decree.

Reversed in part, affirmed in part and remanded.